FILED IN CLERKS OFFICE 2021 DEC -3 AM 9:27 U.S. DISTRICT COURT DISTRICT OF MASS.

# COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1. BREACH OF CONTRACT
2. NEGLIGENCE

**JURY TRIAL DEMANDED**

COMES NOW PLAINTIFF ANTHONY RICH and files this Complaint for two causes of action against Defendants FACEBOOK INC. (now rebranded as of October 28th, 2021, as META PLATFORMS INC. DBA META) et al and alleges as follows:

## I. NATURE OF THE ACTION

a. This lawsuit is about:

- META/FACEBOOK's defective algorithms that supposedly identify violations of the Terms of Service ("TOS") and Community Standards, but in fact incorrectly target copyright infringement.

- META's breach of partnership with the plaintiff as a FACEBOOK verified user and business (EventHorizon endurance sport) a registered LLC, which has gone through vetting requirements defined by Facebook. META's breach or partnership with the plaintiff as a FACEBOOK "Level-Up Creator/Partner." FACEBOOK's breach of partnership as an annual advertising paying client of FACEBOOK. The plaintiff's small business relies heavily on FACEBOOK for revenue from content creation and publishing content to many followers and several established FACEBOOK groups.

- META's inconsistent, arbitrary, capricious, and unfair application/ enforcement of those algorithms, including removing content that did not violate copyright rules, falsely labeling the plaintiff as a "frequent violator," and blocking the plaintiff's access to facebook.com, the plaintiff's access to his FACEBOOK business suite, his FACEBOOK advertising account, his FACEBOOK creator studio, and his use of the Oculus Rift 2. META ignored repeated requests over several months from the plaintiff and attorneys to provide specifics or details of the alleged infringement to properly resolve the matter. META's callous indifference caused the plaintiff to suffer significant damages by blocking all small business strategies and pursuits.

- META's refusal to allow users to contact an engage in constructive dialogue with a real person at FACEBOOK about disabled accounts, removed content, alleged infringement, and how to resolve matters in good faith.

b. Plaintiff Anthony Rich ("RICH") brings this Action against Defendants META PLATFORMS INC. and three of its executives (collectively "META") for

negligence and repeated breaches of the TOS contract between META PLATFORMS INC. and RICH, which incorporates the Community Standards. FACEBOOK's defective algorithms have incorrectly identified RICH as a user that "*infringes or violates someone else's rights or otherwise violates the law.*" META has inconsistently and unfairly applied/enforced the algorithms' incorrect determinations and has repeatedly punished RICH in an unjust and draconian manner by blocking him from use of facebook.com for more than 9 months (as of this filing) thereby causing him continued substantial business disruption and harm, even when the plaintiff worked with attorneys to reach out to META to genuinely resolve the matter. Moreover, META failed to provide a means for RICH to communicate with a real person at META about his alleged copyright infringement, and the blocks.

c. RICH seeks declaratory and injunctive relief, as described herein.

## II. PARTIES

### a. Plaintiffs

i. Anthony Rich ("RICH") is now, and was at all relevant times, a citizen and resident of Massachusetts.

### b. Defendants

**i.** RICH is informed and believes and thereon alleges that Defendant META PLATFORMS INC. is now, and was at all relevant times, a Delaware corporation with a primary place of business in Menlo Park, San Mateo County, California. META PLATFORMS INC. owns and operates the facebook.com website, a global social media platform, which allows billions of registered users to create profiles; upload and link to articles and pictures; send messages; keep in touch with friends, family, and colleagues worldwide; and see relevant, targeted advertising (which META PLATFORMS INC. monetizes). The facebook.com website also serves as a marketplace connecting individual sellers and buyers. By design, facebook.com is a massive platform upon which individuals and entities rely for their communications. References to FACEBOOK, META or META PLATFORMS INC. herein include its automatic algorithms that patrol the website facebook.com searching for purported violations of its Terms of Service ("TOS") and Community Standards, the current versions of which are attached hereto as Exhibits E and Exhibits F respectively and incorporated herein by reference.

ii. RICH is informed and believes and thereon alleges that Defendant MARK ZUCKERBERG ("ZUCKERBERG") is now, and was at all relevant

        times, the Founder, Chairman, and Chief Executive Officer of META PLATFORMS INC. RICH sues ZUCKERBERG only in his capacity as an officer/employee of META PLATFORMS INC., for his role in the actions described herein.

iii. RICH is informed and believes and thereon alleges that Defendant JENNIFER NEWSTEAD ("NEWSTEAD") is now, and was at all relevant times, the General Counsel of META PLATFORMS INC. RICH sues NEWSTEAD only in her capacity as an officer/employee of META PLATFORMS INC., for her role in the actions described herein.

iv. RICH is informed and believes and thereon alleges that Defendant ANDREW BOSWORTH ("BOSWORTH") is now, and was at all relevant times, the head of META virtual reality and augmented reality. RICH sues BOSWORTH only in his capacity as an officer/employee of META PLATFORMS INC., for his role in the actions described herein.

## III. JURISDICTION AND VENUE

a. Unlimited] jurisdiction and venue are proper in the Federal Court of Massachusetts, County of Suffolk because:

i. a) RICH is a citizen of Massachusetts.

ii. b) META PLATFORMS INC. is headquartered in San Mateo County, California.

iii. c) META PLATFORMS INC.'s TOS, Section 4, ¶ 2 specifies that disputes may be litigated in this Court; and

iv. d) RICH seeks a permanent injunction not available in limited jurisdiction, Code Civ. Proc. §§ 86(a)(1), 580(b).

## IV. STATEMENT OF FACTS

### HIGH LEVEL DETAILS

**a.** RICH has been actively using facebook.com since 2004. RICH's user account is "OMINNAR." "https://facebook.com/ominnar." RICH's FACEBOOK account remained in excellent standing with no violations or "strikes" at all. RICH's use of his personal FACEBOOK profile was primarily nothing more than a publishing channel for RICH's small business pursuits within fitness and nutrition science. RICH almost never posted personal information or engages in comments sections personally or posts provocatively. The only valid instance of a copyright notification RICH ever received by FACEBOOK to his knowledge was a 90 second science channel video RICH uploaded about Stephen Hawking and the video was posted an estimated 5 or more years ago. The matter was resolved expeditiously when FACEBOOK engaged RICH in early 2020 (estimated time). RICH responded with the following fair use statement:

*"I do not claim ownership of the copyrighted material. However, as a content creator by profession I have made the clip available in my efforts to advance the understanding of science and the scientific method. Therefore, I believe this constitutes a "fair use" of the copyrighted material as provided for in section 107 of the US Copyright Law. In accordance with Title 17 U.S.C. Section 107, the Discovery Channel clip has been distributed without profit to those who have expressed a prior interest in receiving the included information for research and educational purposes."*

FACEBOOK responded to RICH's reply in 2020 and stated to RICH that if he wants the video to remain posted on his wall he can contact the content owner if he wishes. RICH did not care enough about this post to do that and let the matter go. FACEBOOK took down the post and that was the end of that matter.

**b.** RICH is the creator and administrator of the FACEBOOK page https://facebok.com/EventHorizon.Tv with over 160,000 followers and which he set up for his black owned small business EventHorizon endurance sport DBA EVENT HORIZON SOLUTIONS which is a fitness and nutrition digital media company founded by RICH, and heavily relies on FACEBOOK. RICH can only operate the page if his personal profile is active.

**c.** RICH satisfied all FACEBOOK's requirements to become approved by FACEBOOK as verified business which means he and his business completed vetting requirements defined by FACEBOOK. This vetting entailed government document verification by FACEBOOK, in return for a package of stated benefits including premium level support. (See EXHIBIT G)

    **d.** RICH satisfied all FACEBOOK's requirements to become what FACBOOK calls a "Level-Up Creator/Partner." In return FACBOOK has agreed to partner with RICH to livestream as much as possible, accumulate as many followers and follower engagement as possible in return for a package of stated benefits including premium level support. (See EXHIBIT H)

**e.** RICH exclusively utilized the FACBOOK Sound Collection for all livestream background music. The FACEBOOK Sound Collection is a free resource FACEBOOK makes available to content creators to use copyright free tracks for FACEBOOK published content. (See EXHIBITS I)

**f.** RICH has a FACBOOK Business Suite account and a FACBOOK advertising account. RICH can only operate them to run his business activities if his personal profile is active.

**g.** RICH has a FACBOOK Creator Studio. RICH can only operate it to run his business activities if his personal profile is active.

**h.** RICH purchased the Oculus Rift 2 virtual reality unit in 2021. Oculus is owned by META PLATFORMS INC. RICH can only operate the unit if his personal profile is active.

**i.** The relationship between RICH and FACEBOOK is governed by the TOS, which – at Section 3, ¶ 2 – incorporates the Community Standards. As well as the FACEBOOK verified Business and Level-Up Creator/Partner agreements. (see EXHIBITS G & H)

**j.** RICH was awarded a $2,500 cash grant from the Facebook Small Business Grants Program for Black-Owned Businesses. This included an additional award of a $1,500 Ad credit. RICH was running an advertisement for his business with this credit when FACBOOK disabled the account.

**k.** RICH relies on facebook.com to make a living with his business which heavily relies on FACEBOOK. His business is over 10 years old, and RICH has built a following over 160,000 followers on the platform as well as an administrator of several FACEBOOK groups and communities. RICH also uses FACEBOOK as a means of keeping in touch with clients, family, friends, classmates, and community members; receiving updates from individuals, entities, and websites that he has "liked" and follows; and viewing relevant advertising targeted to his businesses' interests. RICH use of facebook.com includes both a primary means of one-to-one communication with other friends/users, clients, prospective clients and more often, efficiently livestreaming and "broadcasting" his original and business-related posts, his Podcasts he hosts, science posts and reposts of others' content to hundreds of friends/users/followers at a time, via his own "wall," business page and also in smaller groups (and sub-groups) of which he is a member. RICH is informed and believes and thereon alleges that this sort of mass

communication via facebook.com is exactly how FACEBOOK intended users and business partners like RICH to use the platform. RICH's ability to communicate via facebook.com has been particularly important to him in 2021 due to COVID related restrictions on travel and socializing in person in operating his business and garnering business revenue.

## TIMELINE of EVENTS and INCIDENTS

l. **March 13, 2021:** RICH received the following email from FACEBOOK stating a livestream was partially muted because it may contain music that belongs to someone else. But RICH utilizes FACEBOOK's own FACEBOOK Sound Collection for all livestreaming activities including the referenced post. Insofar as FACEBOOK provides such a resource of copyright free tracks to content creators, RICH could not have infringed on any entity's rights. (See EXHIBIT I)

Your video contains a clip that belongs to someone else

Facebook

Facebook

Dear Tony,

Your video has been partially muted because it may contain music that belongs to someone else.

The video is: "The 4 Horseman" posted on March 13, 2021.

Make sure you only post content that you own or have permission from the copyright owner to use. Posting content you don't own may violate copyright law. Learn more.

You can post the partially muted video or restore the audio if you own the rights to the content.

View on Facebook.

Thanks,
The Facebook Rights Manager Team

**Screenshot #1 in APPENDIX J**

m. **March 27, 2021:** RICH received the following email from FACEBOOK stating that rich was temporarily blocked from posting on facebook.com. RICH posted no new content at all in the period from the last FACEBOOK email to the FACEBOOK email on this date. To date there is no detailed explanation from FACEBOOK on why this warning was sent to RICH, or why such a block was administered on his account.



A Message from Facebook

Facebook

Hello,

You've been temporarily blocked from posting on Facebook because you posted something that infringed someone else's intellectual property rights.

This block is temporary and expires in 3 days.

If you continue to post content that infringes or violates others' rights or otherwise violates the law, you could have your account permanently disabled.

To learn more about intellectual property, please visit the Help Center:

https://www.facebook.com/help/399224883474207

Thanks,

The Facebook Team

**Screenshot #2 in APPENDIX J**

**n. March 29, 2021:** RICH received another email from FACEBOOK warning about posts that "infringes or violates someone else's intellectual property rights or otherwise violates the law." When RICH logged into his account by phone RICH viewed a notification which was screenshotted. As you can see there was a "See Details" link. **<u>However, when RICH selected the "See Details" hypertext it brought you to a page that had no details at all and was completely blank.</u>**

A Message from Facebook

Facebook

Hello,

By using Facebook, you have agreed to our Terms of Service, which prohibit people from taking any action on Facebook that infringes or violates someone else's intellectual property rights or otherwise violates the law. If you repeatedly post content that infringes someone else's intellectual property rights, such as copyrights or trademarks, your account may be disabled or your Page removed under Facebook's repeat infringer policy. Your ability to post photos or videos may be limited, and you could also lose access to certain features or functionality on Facebook.

The actions taken under the policy may depend on the nature of the reported content and where it was posted. If you believe your account was disabled by mistake, please visit:

If something you posted is restored due to an appeal or because a rights owner withdrew their report, we'll take that restoration into account under our repeat infringer policy.

Thanks,

The Facebook Team

**Screenshot #3 in APPENDIX J**

# Notifications

## New

Your post was reported for copyright infringement so no one else can see it. **See details.**

21 minutes ago

**Screenshot #4 in APPENDIX J**

o. **March 29, 2021:** RICH immediately went to his computer, logged into FACEBOOK and again found no details at all about the alleged infringement. Upon typing questions to FACEBOOK about the mysterious notifications, RICH hit the "Submit" button to FACEBOOK support and the application logged out displaying the following screen stating the account was disabled.

**Screenshot #5 in APPENDIX J**

p. **April 1, 2021:** RICH sent the first of several appeals though FACEBOOK's online appeal website and filed FACEBOOK Intellectual Property Appeal **#1538839046314081**

q. **April 1, 2021:** RICH received a form letter response that evening from an entity that only identified itself as "Vision" paradoxically asking RICH to provide the details of the alleged copyright infringement. This made no sense since FACEBOOK bears the responsibility to tell RICH what the nature of the alleged infringement was. Moreover, the foundation of RICH's appeal was that he was never provided any credible detail or specifics of any infringements and furthermore RICH never posted anything in the alleged timeframe. RICH responded back to "Vision" that he was FACEBOOK verified as a business and a user and he believed his profile was disabled in error. This should have triggered premium level support by FACEBOOK pursuant to the terms of FACEBOOK's verified business support rules.



Copyright Appeal Contact Form #1538839046314081

Facebook

Hi,

We've received your request that we review the removal of content posted to Facebook. However, to help us look into your request, please send us the following information:
- The report number relating to the content removal
- A link (URL) to content at issue
- An email address used to log into the Facebook account that received the warning about the content removal

Once you've provided this information, we'll continue to look into your report.

Thanks,

Vision

>On Thu Apr 1, 2021 14:07:17, original message wrote:
>Your name (name and surname) : Tony Rich
>Email address :
>Please provide URL(s)/description leading to where the content appeared on Facebook : No information or details were provided by Facebook or no other party about the claim(s) of copyright infringement. The "details" link in the screenshot yielded no information. It appears these were fraudulent claims by bots or fake accounts in order to abuse the Facebook procedures to erroneously disable my account.
>Please explain why you believe the content should not have been removed : No information or details were provided by Facebook or no other party about the claim(s) of copyright infringement. The "details" link in the screenshot yielded no information. It appears these were fraudulent claims by bots or fake accounts in order to abuse the Facebook procedures to erroneously disable my account.
>Please confirm that you wish to submit this form : --
>Electronic signature : Anthony Rich
>

**Screenshot #6 in APPENDIX J**

r. **April 2, 2021:** RICH received another reply to the appeal from an entity that only identified itself as "Cameron" falsely stating that RICH was a "repeat infringer" and was "no longer permitted to use FACEBOOK." RICH sent multiple replies requesting specific details of the alleged infringements and that an error had surely been made because **RICH was never provided any specific or credible details of infringing copyrights.** The replies went unanswered by FACEBOOK despite FACEBOOK's requirement to provide RICH with premium support as a Facebook verified user/business and a Level-Up Creator/Partner.

Copyright Appeal Contact Form #1538839046314081

Facebook

Hi,

As a user of Facebook, you have agreed to our Terms of Service, which states that users are prohibited from taking any action on Facebook that infringes or violates someone else's rights or otherwise violates the law. When we receive a proper claim of intellectual property rights infringement, we promptly remove or disable access to the allegedly infringing post. We also terminate the accounts of repeat infringers in appropriate circumstances.

We previously warned you that if you continued to infringe the rights of third parties, we would terminate your account. Accordingly, your account has been disabled and you are no longer permitted to use Facebook.

Thank you for your cooperation.

Cameron

>On Thu Apr 1, 2021 18:24:45, Tony Rich wrote:
>My Facebook login
>email address is:
>Name: Tony Rich
>My account was disabled for copyright infringement in error. Several
>erroneous copyright infringements were made consecutively over the weekend
>likely by an unverified fake account. I received a notification, but when
>you click on the detail in the notification it was simply blank and I
>receive no email with any detail about content representing the
>infringement. No information or detail was provided to me by Facebook at
>all.
>I do not have any report numbers or URLs to the content because no content
>exists representing infringements because they were fraudulent, likely from
>an unverified fake account.
>The only thing I have is the screenshot of a notification that I got when I
>was able to login last, and another screenshot of what I see now when I try
>to login. These are attached. Since this detail obviously doesn't exist it
>is clear that this was some form of fraudulent or fake account activity
>which resulted in the disabling of my profile in error please restore my
>account expeditiously.
>My profile is connected to a Facebook verified business page always in good
>standing, which is also a Level-Up gaming partner. I rely on my content
>posting for revenue generating content. So please, correct this error as
>soon as possible and re-enable my profile so that I can resume business.
>[image: photo]
>*Tony Rich*
>Founder, Managing Director, Head Coach, Guinness World Record Holder
>EventHorizon
>endurance sport

**Screenshot #7 in APPENDIX J**

s. **April 2, 2021:** FACEBOOK owns the virtual reality devices company OCULUS which is a division of META PLATFORMS INC. RICH is the owner of the Oculus Rift 2 virtual reality game that requires an active FACEBOOK account to use. RICH purchased the Oculus Rift 2 for $299 plus taxes. RICH entered a support **ticket**

       **#2545121** with OCULUS. RICH used his leverage as an Oculus Rift 2 user to get FACEBOOK to research the issue as he would be unable to use his Oculus Rift 2 without the account being re-enabled.

t. **April 6, 2021:** RICH reached out to **Andrew Bosworth the head of Virtual Reality at META/OCULUS on LinkedIn** (https://www.linkedin.com/in/andrew-bosworth-8247a01/). RICH wrote a letter to Bosworth sympathizing that he must be busy but explaining the situation and requested help. RICH indicated he was convinced that an error occurred and that if an actual person investigated the issue with thoughtful assessment the situation would be resolved. Bosworth did not respond at all to RICH.

**u.** **April 15, 2021:** An OCULUS support associate identifying himself as Robert responded to RICH stating that RICH's account "could not be re-enabled as it had previous activity that violated FACEBOOK community standards." RICH immediately replied to Robert stating that the issue was an error and to provide specifics of the alleged violated. The OCULUS support associate did not respond.

v. **April 16, 2021:** RICH filed **a complaint #1123322** against FACEBOOK with Massachusetts Attorney General's Office.

w. **April 16, 2021:** RICH signed an engagement agreement with the Sunstein LLP law firm based in Boston, Massachusetts who specializes in copyright law and would assist RICH in arbitration with FACEBOOK to resolve the matter.

x. **April 17, 2021:** RICH filed a **complaint #15381757** against FACEBOOK with the Better Business Bureau.

y. **April 28, 2021:** Attorneys at Sunstein LLP sent FACEBOOK a two-page letter requesting immediate review of RICH's disabled account and referencing FACBOOK's terms of service **section 4.2 which states that FACBOOK will notify users of the reason for any suspension or disabled access**. Sunstein LLP, requested immediate assistance to resolve the matter. (See EXHIBIT B) Again, there was no response from FACEBOOK to this letter.

z. **May 3, 2021: RICH** received a response from the Consumer Advocacy and Response Division of the Massachusetts Attorney General Office (AGO) who confirmed filing of the **report #1123322** and recommended RICH file a report with the Federal Communications Commission and advised RICH of legal options.

aa. **May 13, 2021:** RICH filed **a complaint #4775532** against FACEBOOK with the Federal Communications Commission Consumer and Governmental Affairs Bureau-Consumer Complaints.

bb. **May 14, 2021:** RICH received a response back from the Federal Communications Commission. The FCC acknowledge receipt of the complaint and recommended that RICH file a complaint with the Federal Trade Commission.

cc. **May 14, 2021:** RICH filed **a report #134544075** against FACEBOOK with Federal Trade Commission. The FTC acknowledged receipt of the report and confirmed the report will be entered in the FTC's Consumer Sentinel database and will be available to federal, state, and local law enforcement across the country.

dd. **May 14, 2021:** the Sunstein LLP law firm attorneys received a response from initial inquiries to FACEBOOK they sent through the FACBOOK help center. The correspondence was from an entity that only identified itself as "Armando" and once again the entity queried the attorneys about the details and specific of the alleged copyright infringement, when it is in fact FACEBOOK that should provide such details. The attorneys responded back to Armando on this day explaining that the bigger concern is that FACEBOOK disabled RICH's account without providing a reason or remedy and asked him for additional information about why RICH's account was disabled and how to regain access.

ee. **May 19, 2021:** RICH entered another support ticket **#2786141** with OCULUS support to attempt to further investigate the matter stating he is unable to utilize the Oculus Rift 2 that he purchased if the issue remained unresolved. This time RICH requested that OCULUS support escalate the issue to a supervisor.

ff. **May 20, 2021:** The Sunstein LLP law firm attorneys did not receive a response back from Armando and therefore made the same request to him 6 days later this day. Sunstein LLP reiterated that they cannot provide him with the information he requested relating to the copyright appeal without regaining access to RICH's account, and Sunstein LLP asked Armando again for help. Again, there was no response from FACEBOOK.

gg. **May 25, 2021:** An OCULUS support associate identifying himself as Jordan responded to RICH simply pasting the same exact form letter stating that RICH's account "could not be re-enabled as it had previous activity that violated FACEBOOK community standards." RICH immediately replied to Robert stating that the issue was an error and to provide specifics of the alleged violated. The OCULUS support associate did not immediately respond.

hh. **May 26, 2021:** After RICH sent several replies to the OCULUS associate Jordan replied simply saying "OCULUS did not have insight into FACEBOOK account information." This is a highly problematic response since OCULUS and FACBOOK are under the same parent company now META PLATOFRMS INC.

ii. **May 26, 2021: RICH reached out to CEO of FACEBOOK (META) Mark Zuckerberg on LinkedIn** (https://www.linkedin.com/in/mark-zuckerberg-618bba58/). RICH wrote a letter to Zuckerberg sympathizing that he must be busy but explaining the situation and requested help. RICH indicated he was convinced that an error occurred and that if an actual person investigated the issue with thoughtful

assessment the situation would be resolved. Zuckerberg did not respond at all to RICH.

jj. **June 7, 2021:** RICH sent another appeal though FACEBOOK's online appeal website and filed FACEBOOK Intellectual Property Appeal **#192898482605487.**

kk. **June 9, 2021:** RICH received another form letter response identical to the form letter response sent by FACEBOOK on April 1, 2021, described above. This time the entity identified itself as "Ronny" paradoxically asking RICH to again provide the details of the alleged copyright infringement. This again made no sense since FACEBOOK bears the responsibility to tell RICH what the nature of the alleged infringement(s) were. Moreover, the foundation of RICH's appeal was that he was never provided any credible detail or specifics of any infringements and he did not post anything. RICH responded back to "Ronny" and copied attorneys from Sunstein LLP. In summary RICH responded to "Rony" with the original appeal number. RICH summarized that the livestream content on March 13, 2021, which was a 3 hour and 10-minute livestream called **"the 4-Horseman,"** that FACEBOOK referenced as potentially "containing music belonging to someone else" uses only tracks provided through FACEBOOK's own FACEBOOK Sound Collection and therefore FACEBOOK's algorithm had to have flagged the content in error. Once again FACEBOOK was completely negligent and did not send back any response at all.

Tony Rich
to Lisa, Katherine, Facebook

To the attention of Ronny,

- -The original report number of the complaint at issue

original appeal **#153883904631408**1 (attorneys copied also filed an appeal)

- -Identification of the content that has been removed or to which access has been disabled

We've located and identified the following automated email related to the livestream content titled "**The 4 Horsemen.**" To our knowledge this triggered the copyright notification(s) and disablement (see below copy of email notification)

- -An explanation of why you believe the content should be restored

1. The livestream event that triggered the disablement, "**The 4 Horsemen**" uses **only** background music downloaded from the Facebook Sound Collection Library, to avoid such copyright infringement issues.
2. The attached file titled "FSC" provides the digital forensic evidence for each one of the 39 tracks that were downloaded from the Facebook Sound Collection Library and used in "**The 4 Horseman**" livestream, and all other livestreams to which there are several.
3. As you can see the digital forensics in the attached file "FSC" for each track in this file demonstrate the Facebook download domains.
4. The attached "FSC" file is the proof that each track was downloaded from Facebook Sound Collection Library, and on which date it was downloaded, and therefore did not violate copyright since the Facebook Sound Collection is provided to Facebook level up partners to avoid such copyright issues.
5. Every livestream used, including the one that apparently triggered the disablement "The 4 Horsemen," **only** used these 39 tracks, which means the Facebook algorithm had to have flagged the account/content in error.

I'm working with attorney's on the issue, copied on this email. They've also sent in an appeal on my behalf. Please reach out to us directly with any additional questions.

Tony Rich
617-319-5627

Screenshot #8 in APPENDIX J

ll. **June 14, 2021:** After 5 days without a response**,** RICH replied to the thread requesting a response from the entity identifying itself as "Ronny." RICH also sent "Ronny" digital forensics (see EXHIBIT A) and copied Sunstein LLP attorneys. This document provides all 39 tracks downloaded from the FACEBOOK Sound collection and transcribes minute-by-minute the entire March 13nth livestream video by RICH titled "the 4-Horsemen," and the exact FACEBOOK sound collection tracks played for each minute of the livestream. The document also provided proof of the FACEBOOK Sound Collection domains each track was downloaded from, as well as the date and time the tracks were downloaded. This was indisputable proof provided to FACEBOOK that there was no infringement on this livestream. RICH requested that FACEBOOK take prompt action to respond or restore the account. Yet again, there was no direct response from FACEBOOK. Adding insult to RICH, for some unknown reason FACEBOOK deleted a duplicate post of the 4-horseman livestream and over a year's worth of other livestream content from RICH's FACEBOOK business page https://facebok.com/EventHorizon.Tv. All that content utilized background music only from FACEBOOK's own Sound Collection.

mm. **June 14, 2021:** RICH entered another support ticket **#292293** with OCULUS support to attempt to further investigate the matter stating he is unable to utilize the Oculus Rift 2 that he purchased if the issue remained unresolved. RICH copied OCULUS on the previous correspondence sent to "Ronny" at FACEBOOK detailing the digital forensics proving there was no copyright violation. RICH received a response from an OCULUS associate identifying himself as "Filipe" stating that he reviewed all of the OCULUS tickets and there was nothing he could do, but confirmed that I was investigating the issue with the correct group which he described as "**The FACEBOOK Rights Manager Team**."

nn. **June 29, 2021:** After weeks of no response at all from FACEBOOK to appeal **#192898482605487.** Sunstein LLP attorneys responded to the thread addressing the entity identifying itself as "Ronny." Sunstein LLP requested additional information and offered to assist in arbitration and explained that every day the situation is not resolved RICH is experiencing significant harm and business disruption. Yet again, FACEBOOK ignored the request and did not respond at all.



RE: Copyright Appeal Contact Form #192898482605487 [Sunstein Ref. 4799/5001]

Katherine W. Soule — Jun 29, 2021, 4:53 AM

Dear Ronny,

We represent Mr. Anthony Rich, the user of the Facebook account www.facebook.com/... As you know, Facebook disabled Mr. Rich's account without providing any additional information and since then has been unresponsive to attempts by Mr. Rich to understand why his account was disabled or to restore his account. Facebook has been simi[lar] unresponsive to attempts by Mr. Rich to learn more about the perceived copyright issue that is the subject of Copyright Appeal No. 192898482605487, with which we understand that you are assisting Mr. Rich.

Mr. Rich has explained in his emails to you of June 9, 2021, and June 14, 2021, that the livestream event that triggered his account being disabled used only background music downloaded from the Facebook Sound Collection Library, as evidenced in the attached PDF, provided to you by Mr. Rich on June 9, 2021, and again on June 14, 2021. In his email June 9, Mr. Rich provided the original report number, identification of the content that has been removed, and an explanation of why the removed content should be restored, which is the information you requested on June 9, 2021.

Is there any additional information that we may supply to you to assist you with looking into this issue further? ***If not, please confirm that Mr. Rich's accounts will be immediately reinstated.***

Otherwise, we request immediate review and require information regarding why Facebook disabled Mr. Rich's account and regarding how Mr. Rich may regain access to his personal account and to his professional account (www.facebook.com/EventHorizon...), which Mr. Rich manages through his personal account. We also require information regarding the content that Facebook continues to remove from Mr. Rich's professional page without explanation. This request is consistent with Section 4.2 of Facebook's Terms of Service, which provides that Facebook will notify users of the reason for any suspension or disabled access to an account, and options for requesting review, wh[ich] Mr. Rich has not received from Facebook to date, despite making numerous inquiries to Facebook.

The most pressing issue for our client at this time is that Facebook has disabled his personal account, preventing him from managing his business account, which provides one of Mr. Rich's primary methods of supporting himself.

We require your immediate response.

Sincerely,

Katherine

**Katherine W. Soule**, Associate
**Sunstein LLP**
100 High Street | Boston, MA 02110-2321
617.692.2327 direct | 617.443.9292 main | 617.443.0004 fax
ksoule@sunsteinlaw.com | www.sunsteinlaw.com
**Winning Intellectual Property®**

This e-mail is from Sunstein LLP, a law firm, and may contain information that is confidential or privileged. If you are not the intended recipient, do not read, copy or distribute the e-mail or any attachments. Instead, please notify the sender and delete the e-mail and any attachments. Thank you.

**Screenshot #9 in APPENDIX J**

**oo. July 23, 2021:** With callous indifference FACEBOOK ignored RICH and Sunstein LLP, so on this day RICH sent in yet another online **appeal #146916900855385** through FACEBOOK's online appeal process referencing all precious appeals and background information.

**pp. July 25, 2021:** RICH received a reply regarding **appeal #146916900855385** from an entity identifying as "Pearson," and this time, FACEBOOK did not even address the issue at all, and sent RICH the most basic and pedantic form letter.

Copyright Appeal Contact Form #146916900855385

Facebook — Jul 25, 2021, 11:14 AM

to me

Hi,

We've removed or disabled access to your profile, Page or group for violating the Facebook Terms of Service.

Our policies prohibit posting content that infringes or violates someone else's rights or otherwise violates the law.

If you have any further questions, please visit the Intellectual Property section of the Help Center:
https://www.facebook.com/help/...

If you believe the content shouldn't have been removed, you can contact us by filling out this form:
https://www.facebook.com/help/contact/...

Thanks,

Pearson

**Screenshot #10 in APPENDIX J**

**qq. August 20, 2021:** Sunstein LLP attorneys sent another detailed three-page letter this time addressed to **Jennifer Newstead, Esq** who is the **Chief Legal Officer** of FACEBOOK. This letter appears in (See Exhibit C). Sunstein LLP requested help and listed all of the key issues and the fact that RICH was never provided any valid reasons for the actions taken.

**rr. August 27, 2021** Even having attorneys at a law firm specializing in copyright and intellectual property law communicating with FACEBOOK's chief attorney had no impact at all. FACEBOOK did not have the decency to respond with specifics and details and sent back the cheapest of pedantic form letters to Sunstein LLP that was barely 500 characters.



Subject: FW: Your Correspondence to Facebook Inc

Katherine W. Soule <Ksoule@sunsteinlaw.com>
to Erin E. Connors

Wed, Sep 1, 1:02 PM

You are viewing an attached message. Gmail can't verify the authenticity of attached messages.

Sent with BlackBerry Work
(www.blackberry.com)

**From:** Facebook <case++aazqvza7qos2jj@support.facebook.com>
**Date:** Friday, Aug 27, 2021, 4:09 AM
**To:** Katherine W. Soule <Ksoule@sunsteinlaw.com>
**Subject:** Re: Your Correspondence to Facebook Inc

Hi,

Thank you for your correspondence to Jennifer Newstead at Facebook Inc dated 2021-08-20, which has come to our team's attention. A copy of your correspondence is attached for your reference.

It looks like you've recently had content removed for intellectual property reasons. Facebook has a repeat infringement policy, and - in cases where content posted on a Page, Profile, or Ad Account is repeatedly reported and removed for IP reasons - we may remove the entire Page, Profile, or Ad Account. Unfortunately, we won't be able to restore your content. You can learn more about why your content was removed from this article in Facebook's Help Center:
https://www.facebook.com/help/350712395302528

Thanks,

Facebook

**Screenshot #11 in APPENDIX J**

ss. **September 10, 2021:** RICH began a series of steps to take legal action as all forms of arbitration were exhausted over more than 5 months. FACEBOOK made it clear that they were indifferent to the substantial financial harm and distress done to RICH and his small business. RICH filed a complaint in small claims court in Boston.

tt. **October 28, 2021:** On this day RICH attempted to log-in to FACEBOOK as he had done regularly. RICH no longer received the "account disabled" error message. The error as indicated read "Can't Find Account" suggesting that FACEBOOK had done the unthinkable and with callous indifference deleted RICH's personal FACEBOOK account he's had for over 17 years. This despite RICH and attorneys representing him bending over backwards for more than 9 months to try to equitable remedy the matter. This despite all the correspondence, appeals and communication initiated with FACEBOOK executives on the highest levels including Mark Zuckerberg, Andrew Bosworth and Jennifer Newstead, Esq. This action by FACEBOOK if irreversible causes substantial harm to RICH. It wiped out decades of personal content, digital assets, and media. It has severed the relationships and groups that RICH has built over 17 years and blocked ability to effectively communicate with over 160,000 followers on the platform. It has severed RICH's ability to manage his black owned small business and substantially diminished RICH's business revenue stream by disconnecting RICH from the FACEBOOK business advertising account and the

FACEBOOK business suite. This action by FACEBOOK would be the trigger for RICH to launch an even higher level of necessary legal action.

**Screenshot #12 in APPENDIX J**

uu. **November 17, 2021:** Sunstein LLP attorneys sent another letter to Jennifer Newstead, Esq. reiterating that the action was causing RICH substantial harm and to attempt to try to arbitrate amicably. Please find this letter in (See EXHIBIT D). To date FACEBOOK did not respond to this request.

vv. **December 1, 2021:** RICH finalized documents for a complaint against FACEBOOK in Massachusetts Federal Court.

## FIRST CAUSE OF ACTION
## [Breach of Contract, Civil Code §§ 1549, 3384, 3342]
## (Against Defendant META PLATFORMS INC.)

RICH hereby incorporates the foregoing paragraphs as though set forth in full herein.

RICH agreed to META PLATFORMS INC.'s TOS (a contract of adhesion) when he joined facebook.com. RICH did all, or substantially all, of the significant things that the TOS required

him to do. META PLATFORMS INC. breached a contract with RICH as the administrator of a FACEBOOK verified small business (EventHorizon.Tv endurance sport) which required META to approve RICH as the verified administrator of the verified business and as such have premium business support from META. META PLATFORMS INC. breached a contract with RICH as a FACEBOOK Level-Up Creator/Partner which required META to provide RICH with premium support in exchange for livestreaming, gaining followers and driving facebook.com follower engagement. META PLATFORMS INC. breached a contract with RICH by disabling his account not allowing him to fulfill his duties as a FACEBOOK Level-Up Creator/Partner by livestreaming, gaining followers and driving facebook.com follower engagement. META PLATFORMS INC. breached a contract with RICH by refusing to provide RICH with support as an Oculus Rift 2 owner which restricted RICH's use of the Oculus Rift 2. META PLATFORMS INC., by and through its algorithms, failed to follow its TOS and Community Standards, and repeatedly, arbitrarily, capriciously, and unjustifiably disabled RICH from using facebook.com. **Section 4.2 of META's TOS provides that META will notify users of the reason for any suspension or disabled access to accounts.** META only copied and pasted pedantic and simplistic form letters with no detail and sent it to RICH and attorneys representing him. META PLATFORMS INC. also breached its TOS and Community Standards by removing multiple livestream posts from RICH's business profile page (https://facebook.com/EventHorizon.Tv) for an unknown reason or on the grounds that the livestreams purportedly violated its Community Standards, even though all livestream content utilized the FACEBOOK Sound Collection for all background music and could not possibly infringe on any parties content by META's own definition. To the extent that these removals were due to algorithms, the algorithms are defective. Moreover, RICH saw the 4-Horseman Livestream on his business FACEBOOK page even after being disabled and META PLATFORMS INC. removed it only after RICH communicated through several appeals and presumably made META aware that the post was still visible on the business profile page. META PLATFORMS INC. breached its TOS, Community Standards and business partner agreements, and Level-UP Creator/Partner agreements by making it near impossible if not completely impossible for RICH or attorneys representing him to genuinely and in good faith arbitrate and remedy matters whether they be due to algorithms, product, and user experience; and to engage in a constructive dialogue with a real person at META PLATFORMS INC. about alleged violations of the TOS or Community Standards, or META PLATFORMS INC.'s improper account disablement. RICH has been harmed by META PLATFORMS INC. repeatedly and incorrectly determining that he was a "repeat infringer" or violated the TOS and/or Community Standards, leading to META PLATFORMS INC. to disable his personal profile for 9 months as of this filing. This harm includes substantial business financial damage, possible reputation damage, and restricted ability to communicate on facebook.com with clients, prospective clients, over 160,000 followers on his business platform, communities that RICH has built pursuant to his business, friends, family, classmates, and community members during COVID-19 related restrictions on travel and personal contact. META PLATFORMS INC.'s repeated breaches of its TOS and Community Standards were a substantial factor in causing RICH's harm.

WHEREFORE, RICH prays for judgment against Defendant META PLATFORMS INC. as hereinafter set forth.

**SECOND CAUSE OF ACTION**
**[Negligence, Civil Code § 1714(a)]**
**(Against All Defendants)**

RICH hereby incorporates the foregoing paragraphs as though set forth in full herein. The META PLATFORMS INC Defendants were all negligent as to the creation and application of META PLATFORMS INC algorithms and disciplinary policies; RICH was harmed; and META's negligence with callous indifference was a factor in causing RICH, and his black owned small business, substantial harm. More specifically:

**Duty:** Because META PLATFORMS INC has the ability to restrict users gives them immense power to disable users from fully using facebook.com, and given that META PLATFORMS INC has, by design, created a communications platform of user-created content upon which billions of people and business professionals rely on as their primary source of communication with individuals and business operation, META PLATFORMS INC has a duty to create and operate algorithms that actually work, and to enforce the TOS and Community Standards fairly and consistently not arbitrarily. Further, due to FACEBOOK's importance – by design – as a global communications platform and a platform where people like RICH are relying heavily on it to make their business revenue, META PLATFORMS INC has a duty to enable users to initiate substantive contact with a real person at and a robust customer service infrastructure at META Customer Support in regard to purported violations of the TOS and/or Community Standards and FACEBOOK's wrongful disabling users, instead of relying on pedantic and simplistic form letters sent by mysterious parties. META PLATFORMS INC has a duty to erect a reliable support model like any multinational company that does business with the public.

**Breach:** META PLATFORMS INC failed to meet this standard of conduct. META's algorithms do not work properly; indeed, META demonstrated that their algorithms do not work since they flagged RICH's livestream "the 4-Horsemen" for copyright infringement when the entire livestream used only tracks from FACEBOOK's own FACEBOOK Sound Collection. META PLATFORMS INC's arbitrary, capricious, and inconsistent application and enforcement of the TOS and Community Standards breaches its duty to RICH as FACEBOOK partner. Moreover, META PLATFORMS INC makes it impossible or near impossible to initiate contact with a real person at META to discuss its improper removal of content and blocks. Particularly egregiously, META PLATFORMS INC blocked RICH 9 months and apparently deleted his personal profile wiping out in one blow in the upwards of two decades of personal and business content.

**Proximate Cause:** The combination of META PLATFORMS INC's defective copyright infringement algorithms, lack of proper human review, failure to restore RICH's full access to facebook.com even after being provided digital forensics showing his 4-Horseman livestream used only approved FACEBOOK Sound Collection tracks, and failure to enable a means for RICH and attorneys at Sunstein LLP acting on his behalf to contact a real person at META Customer Support was the proximate cause of RICH's injuries.

**Damages:** As the result of META PLATFORMS INC's actions and inactions, RICH has been harmed by META PLATFORMS INC. repeatedly and incorrectly determining that he was a

"repeat infringer" and never proving any details to this very day of the alleged infringements. The disablement of RICH's personal profile, severing his access to his FACEBOOK business accounts (Business Suite, Advertising Account and Creator Studio) on facebook.com caused great harm. This harm includes monetary harm, possible reputation damage, and restricted ability to communicate on facebook.com with clients, prospective clients, friends, family, classmates, and fitness and nutrition communities he leads on FACEBOOK.

RICH is informed and believes and thereon alleges that Defendants ZUCKERBERG, NEWSTEAD, BOSWORTH, have all been personally involved in the creation and application of FACEBOOK's algorithms. WHEREFORE, RICH prays for judgment against Defendants as hereinafter set forth.

**PRAYER FOR RELIEF**
**(Against All Defendants)**

A. An Order from this Court declaring that RICH's posts on facebook.com described herein did not violate META PLATFORMS INC.'s TOS or Community Standards.

B. An Order from this Court declaring that META PLATFORMS INC. must restore RICH's full access to facebook.com's website, services and if possible, rebuild and restore his personal profile as it was on March 29, 2021, prior to the disablement.

C. An Order from this Court declaring that META PLATFORMS INC. must restore over a year's worth of livestream content with background music from the FACEBOOK Sound Collection, that FACEBOOK deleted from RICH's https://facebok.com/EventHorizon.Tv FACEBOOK business page for reasons still unknown.

D. An Order from this Court that META PLATFORMS INC. must remove any "frequent infringer," or similar flags insofar as they may exist, or indicators on RICH's facebook.com account.

E. An Order from this Court that META PLATFORMS INC. must immediately review its overall process for flagging, reviewing, and removing purportedly violative content; that FACEBOOK must create transparency in how individual users can dispute incorrect determinations by the algorithms; and that FACEBOOK (including its copyright infringement algorithms) must follow the TOS and Community Standards as to RICH (and other users)

F. An Order from this Court that META PLATFORMS INC. must ensure that its algorithms immediately remove any "violation points" that count towards blocks from the accounts of RICH (and other users), META PLATFORMS INC. must also immediately remove any blocks triggered by the algorithms' improper addition of those "violation points" for non-violations.

G. An Order from this Court that META PLATFORMS INC. must create and implement easy-to-find and easy-to-use means by which RICH (and other users) can initiate contact with real people, not just algorithms, at META Customer Support to engage in constructive person-to-person dialogue about purported violations of the TOS and/or Community Standards, removal of content, and blocks.

H. An Order from this Court prohibiting META PLATFORMS INC. from retaliating against RICH in any manner for filing this Action.

I. Attorneys' fees, because by prosecuting this action, RICH expects to enforce an important right affecting the public interest and thereby confer a significant benefit on the public or a large class of persons. The necessity and financial burden of private enforcement is such as to make an award of attorneys' fees appropriate, and the attorneys' fees should not, in the interest of justice, be paid out of the recovery of damages. See Code Civ. Proc. § 1021.5. I. Costs of suit. See Code Civ. Proc. §§ 1032, 1033.5.

J. RICH is seeking from META $1,000,000 in damages. Though RICH will defer to the court financial relief as the Court may deem proper to compensate RICH for the substantial personal and business damages and financial harm he has incurred particularly if RICH's personal profile has been deleted permanently and cannot be restored by META.

DATE:___12/1/2021____________BY:________________________________________

EXHIBITS

EXHIBIT A_4 HORSEMEN_4-13-2021
EXHIBIT B_4-28-2021 Letter to Facebook
EXHIBIT C_8-20-2021 Sunstein to Newstead Letter
EXHIBIT D_11-17-21 Sunstein to Newstead_Facebook Letter
EXHIBIT E_FACEBOOK TERMS OF SERVICE
EXHIBIT F_FACEBOOK COMMUNITY STANDARDS_IP
EXHIBIT G_FACEBOOK BUSINESS VERIFICATION
EXHIBIT H_FACEBOOK PARTNER PROGRAM
EXHIBIT I_FACEBOOK SOUND COLLECTION
EXHIBIT J_SCREENSHOT APPENDIX