UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                    )
ANTHONY E. RICH,                    )
                                    )
          Plaintiff,                )
                                    )          Civil Action No.
     v.                             )          21-11956-FDS
                                    )
META PLATFORMS, INC.; MARK          )
ZUCKERBERG; JENNIFER NEWSTEAD;      )
and ANDREW BOSWORTH,                )
                                    )
          Defendants.               )
_____   )
```

MEMORANDUM AND ORDER ON
DEFAULT JUDGMENT AND MOTION TO DISMISS

SAYLOR, C.J.

This case is about a disabled Facebook account.  Plaintiff Anthony Rich, proceeding *pro se*, brought this action against defendants Meta Platforms, Inc., Mark Zuckerberg, Jennifer Newstead, and Andrew Bosworth, seeking to restore his personal profile, amend Facebook's content-flagging and appeal procedures, and obtain damages.  The first amended complaint alleged breach of contract against Meta (Count One) and negligence against all defendants (Count Two).

The Court entered a notice of default against defendants following the filing of executed summonses and the failure of defendants to plead or otherwise defend within the allotted time frame.  Defendants allege that service was improper.  They have moved to vacate the default and dismiss the suit with prejudice for insufficient service of process pursuant to Fed. R. Civ. P. 12(b)(5), lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), and as barred by Section 230 of the Communications

Decency Act.  For the following reasons, the entry of default will be vacated, and the amended complaint will be dismissed.

I.   **Background**

Unless otherwise noted, the following facts are drawn from the first amended complaint.

A.   **Factual Background**

Meta Platforms, Inc., is the owner and operator of Facebook, a global social media platform.  (FAC ¶ II(b)(i)).  Anthony Rich is a resident of Massachusetts who alleges that he has been actively using Facebook since 2004.  (*Id.* ¶¶ II(a)(i), IV(a)).

Sometime in 2010 or 2011, Rich started a business under the name Event Horizon Solutions, a fitness and nutrition digital-media company that relies heavily on Facebook.  (*Id.* ¶ IV(l)).  The complaint alleges that he amassed more than 160,000 followers on Facebook, using the site for communicating with friends and clients, live-streaming, hosting a podcast, and posting or reposting content.  (*Id.*).  He became a "Level-Up Creator," and used a Facebook Business Suite account, Facebook advertising account, and Facebook Creator Studio.  (*Id.* ¶¶ IV(e)-(h)).

Rich was also awarded a $2,500 cash grant from the Facebook Small Business Grants Program for Black-Owned Businesses.  (*Id.* ¶ IV(k)).  That award included an additional $1,500 advertising credit, which he was using when Facebook disabled his account.  (*Id.*).

On March 13, 2021, Rich received an email from Facebook stating that one of his "video[s] has been partially muted because it may contain music that belongs to someone else." (*Id.* ¶ IV(m)).

On March 27, 2021, after he had posted no new content, he received a second email from stating he was temporarily blocked from posting on Facebook.  (*Id.* ¶ IV(n)).

On March 29, 2021, he received a third email from Facebook, warning about posts that

"infringe[] or violate[] someone else's intellectual property rights."  *Id.* ¶ IV(o).  His account was disabled.  (*Id.* ¶ IV(p)).

According to the complaint, since March 29, 2021, Rich has attempted to obtain further explanation concerning why his account was disabled.  He contends that he sent appeals through Facebook's appeal website and Facebook's Intellectual Property Appeal websites; replied to Facebook messages to request additional details; entered support tickets with Oculus, a virtual reality product owned by Meta; contacted Meta Executives on LinkedIn, including Andrew Bosworth, head of Facebook's virtual reality, and Mark Zuckerberg, Facebook CEO; hired a law firm to assist with appeals, letters, and arbitration, including to Jennifer Newstead, chief legal counsel at Meta; and filed reports with multiple government agencies.  (*Id.* ¶¶ IV(p)-(rr)).  He received brief responses, which explained, in substance, that his account had "content removed for intellectual property reasons," and in cases of repeat infringement Facebook "may remove the entire Page, Profile, or Ad Account."  (*See, e.g.*, *Id.* ¶ IV(ss); *see also* ¶¶ IV(s), (ll), (qq)).

On November 17, 2021, Rich sent a second letter to Newstead.  (*Id.* ¶ IV(vv)).  On December 23, 2021, his attorneys received a response from Weil, Gotshal & Manages LLP that referred to the November letter to Jennifer Newstead, which explained Meta had received three reports of infringing content from Discovery Communications.  (*Id.* ¶ IV(xx)).

### B.      Procedural Background

On December 3, 2021, plaintiff filed the complaint in this action, followed by an amended complaint on August 19, 2022.  He filed certifications from a process server indicating that defendants had been served by leaving the summonses on August 30, 2022, with Phillip Voy, lead security for Meta, who purportedly was authorized to accept service.  (ECF Nos. 8-10).

On December 12, 2022, plaintiff moved for default judgment.  On March 8, 2023, the

Court entered an order denying the motion without prejudice because plaintiff had not first sought an entry of default under Fed. R. Civ. P. 55(a). The Court further advised plaintiff that no default would enter "without a showing that defendants were properly served in accordance with Fed. R. Civ. P. 4(e) and that the Court has both personal jurisdiction over the defendants and subject-matter jurisdiction over the case." (ECF No. 13).

On March 22, 2023, plaintiff filed a motion for notice of default, including proof of service of the request for entry of default on defendants. All defendants failed to answer or otherwise respond to the complaint. The clerk entered a default against them on April 18, 2023. Plaintiff has now moved for default judgment as to all defendants. Defendants have moved to vacate the entry of default and dismiss the amended complaint with prejudice.

## II.    <u>Standard of Review</u>

Where, as here, a motion to dismiss is filed against a *pro se* litigant, any document filed by the *pro se* party is "to be liberally construed," and "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). However, while *pro se* complaints "are accorded 'an extra degree of solicitude' . . . even a pro se plaintiff is required 'to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *Wright v. Town of Southbridge*, 2009 WL 415506, at *2 (D. Mass. Jan. 15, 2009) (quoting *Adams v. Stephenson*, 1997 WL 351633, at *1 (1st Cir. 1997) (per curiam)).

## III.    <u>Analysis</u>

### A.    <u>Removal of Default</u>

"The court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). The

"good cause" standard is "a liberal one," *Coon v. Grenier*, 867 F.2d 73, 76 (1st Cir. 1989); the

relevant factors are "whether (1) the default was willful, (2) a set-aside would prejudice plaintiff,

and (3) the alleged defense was meritorious." *United States v. $23,000 in U.S. Currency*, 356

F.3d 157, 164 (1st Cir. 2004).

      Courts have consistently found that claims of insufficient process and lack of personal

jurisdiction may constitute a meritorious defense that provides good cause to set aside the entry

of default. *See, e.g.*, *Thomas v. Bank of Am., N.A.*, 557 F. App'x 873, 875 (11th Cir. 2014)

("Where a plaintiff's service of process is insufficient, a court may have good cause to set aside

an entry of default because the court lacked personal jurisdiction over the defendant and, as a

result, had no power to render judgment against it."); *Ilaw v. Dep't of Just.*, 309 F.R.D. 101, 105

(D.D.C. 2015) (finding that as service was not properly executed, default was not appropriate

because "the Clerk entered default on the basis that Defendant had failed to respond to Plaintiff's

Complaint after the April 30, 2015, service attempt."); *Forward Fin. LLC v. Moss Supermarket*

*LLC*, 303 F. Supp. 3d 209, 210 (D. Mass. 2018) ("[B]efore a default can be entered, the court

must have subject-matter jurisdiction and jurisdiction over the party against whom the judgment

is sought, which also means that the party must have been effectively served with process.");

*Brown v. Dash*, 2020 WL 6806433 (D. Mass. Nov. 18, 2020) ("[B]ecause defendants have

asserted a meritorious defense of lack of personal jurisdiction, the Court will grant the portion of

their motion that requests the setting-aside of the entry of default."); *Aly v. Hanzada for Imp. &*

*Exp. Co.*, 2014 WL 2829513, at *7 (W.D. Mo. June 23, 2014) ("Because a judgment rendered

without personal jurisdiction is void, a lack of personal jurisdiction over the defaulting party

constitutes 'good cause' to vacate an entry of default."); *Hale v. McCall*, 425 F. Supp. 396, 399

(E.D. Tenn. 1976) ("Lack of jurisdiction provides a meritorious defense to the plaintiff's action

and provides good cause for setting aside the entry of default."); *Lichtenstein v. Jewelart, Inc.*, 95 F.R.D. 511, 515 (E.D.N.Y. 1982) (granting motion to set aside default for lack of personal jurisdiction under state long-arm statute and dismissing action).

Here, because defendants have asserted meritorious defenses of lack of sufficient service of process and lack of personal jurisdiction, the Court will grant the motion to set aside the entry of default.

**B.**     **Service of Process**

Before a federal court may exercise personal jurisdiction over a defendant, proper service of process must be effected. *Omni Capital Int'l Ltd. v. Rudolf Wolff & Co.,* 484 U.S. 97, 104 (1987). When the sufficiency of process is challenged under Rule 12(b)(5), plaintiff bears "the burden of proving proper service." *Rivera-Lopez v. Municipality of Dorado,* 979 F.2d 885, 887 (1st Cir. 1992). Rule 4 sets forth the acceptable methods for service of process. Fed. R. Civ. P. 4.

Under Rule 4(e), there are four ways to serve an individual defendant within a federal judicial district: (1) by following the requirements of state law for serving a summons in actions brought in the courts of general jurisdiction in the state where the district court is located or where service is made (here, Massachusetts or California); (2) by delivering a copy of the summons and the complaint to the individual personally; (3) by leaving copies of those items at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (4) by delivering copies to an agent authorized by appointment or by law to receive service of process.

Under Rule 4(h), a corporation may be served within the United States (1) in the manner prescribed by Rule 4(e)(1) for serving an individual (that is, by following state law for serving a summons in an action brought in the courts of general jurisdiction in the state where the district

court is located or where service is made); or (2) by delivering a copy of the summons and complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process.  Fed. R. Civ. P. 4(h)(1).

Under the federal rules, service of process must take place within 90 days after the complaint is filed, or the court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  Fed. R. Civ. P. 4(m).  If the plaintiff shows good cause, then "the court must extend the time for service for an appropriate period."  *Id*.  The court, in its discretion, may also grant an extension of time even absent good cause.  Fed. R. Civ. P. 4 Advisory Committee's Note (1993).

It does not appear that plaintiff complied with any of those methods.  Plaintiff did not serve the individual defendants personally or at their usual places of abode.  Rather, a process server left the summonses for Andrew Bosworth, Jennifer Newstead, and Mark Zuckerberg with Phillip Voy at 1 Hacker Way, Menlo Park, California.

Service was only proper, then, if Voy was an agent authorized by appointment or law to receive service of process on behalf of the individual defendants.  That does not appear to be the case.  The process server simply attested that Voy was "Lead Security / Authorized to Accept."  Subsequent affidavits of service also allege that process was served on other individuals described as "Lead Security / Authorized to Accept."  (*See* ECF Nos. 23-25, 30, 31, 36).

Plaintiff does not identify any conduct on the part of any of the individual defendants that would lead a reasonable person to believe that they had granted Voy, or any other security employees, apparent or actual authority to receive process for them.  That service is therefore insufficient.  *See Jiang v. Tokyo II Steak House, Inc.*, 616 F. Supp. 3d 167, 175 (D. Mass. 2022).[1]

---

[1] Here, unlike in *Jiang*, there are no affidavits from the individual defendants denying the named individuals had authorization to accept service of process on their behalf.  *See Jiang*, 616 F. Supp. 3d at 175; *Blair v.*

As to corporate defendant Meta, no summons was returned executed as to the complaint at all.  There is, accordingly, no evidence that Meta was ever served.

Therefore, the complaint is subject to dismissal for insufficient service of process.

### C.      Personal Jurisdiction

Even assuming that service was proper, plaintiff has failed to establish personal jurisdiction over any of the defendants.  Plaintiffs bear the burden of establishing that the court has personal jurisdiction over defendants.  *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 50 (1st Cir. 2002).  In considering a motion to dismiss under Rule 12(b)(2), the court may employ several standards to assess whether plaintiff has carried that burden:  the "*prima facie*" standard; the "preponderance-of-the-evidence" standard; or the "likelihood" standard.  *See id.* at 50-51, 51 n.5; *Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 145-46 (1st Cir. 1995).  Where, as here, the court is called to make that assessment without first holding an evidentiary hearing, the *prima facie* standard is applied.  *See United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001).

Under that standard, the court takes a plaintiff's "properly documented evidentiary proffers as true and construe[s] them in the light most favorable to [plaintiff's] jurisdictional claim."  *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 58 (1st Cir. 2016) (quoting *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 26 (1st Cir. 2008)).  A plaintiff may not "rely on unsupported allegations in [its] pleadings."  *A Corp.*, 812 F.3d at 58 (quoting *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 134 (1st Cir. 2006)).  "Rather, [the plaintiff] must put forward 'evidence of specific facts' to demonstrate that jurisdiction exists."  *Id.* (quoting *Foster-Miller*,

---

*City of Worcester*, 522 F.3d 105, 112 (1st Cir. 2008) (collecting cases for the proposition that an affidavit denying agency may be sufficient to overcome any presumption of proper service created by returns of service).  However, where the certificates of service are facially inadequate and uncredible, there is sufficient evidence of improper service.

46 F.3d at 145).  Facts offered by the defendant "become part of the mix only to the extent that they are uncontradicted." *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 8 (1st Cir. 2009) (quoting *Adelson v. Hananel,* 510 F.3d 43, 48 (1st Cir. 2007)).  Although the court will construe the facts in the light most favorable to the plaintiff in a motion to dismiss, the plaintiff still has the burden of demonstrating each jurisdictional requirement.  *See Swiss Am. Bank*, 274 F.3d at 618.

The exercise of personal jurisdiction over a defendant must be authorized by statute and be consistent with the due-process requirements of the United States Constitution.  *Nowak v. Tak How Invs.,* 94 F.3d 708, 712 (1st Cir. 1996); *Intech, Inc. v. Triple "C" Marine Salvage, Inc.,* 444 Mass. 122, 125 (2005).  Furthermore,

> [a] district court may exercise authority over a defendant by virtue of either general or specific jurisdiction.  Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities.  General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state.

*Swiss Am. Bank*, 274 F.3d at 618 (citations and quotations omitted).

## 1.   General Jurisdiction

For an individual, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations*, *S.A. v. Brown*, 564 U.S. 915, 924 (2011).  For a foreign-state corporation, a court may assert general jurisdiction "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Id.* at 919 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)).  To be "at home" in a foreign state, a corporation must have affiliations with that state so substantial that it is "comparable to a domestic enterprise in that State." *Daimler AG v. Bauman*, 571 U.S. 117, 133 n.11 (2014).  The Supreme Court has indicated that such

9

jurisdiction will exist only in the "exceptional case." *Id.* at 139 n.19.

None of the individual defendants are domiciled in Massachusetts, nor are there any allegations that the individual defendants have any substantial connection to the state. Meta is a Delaware corporation with a primary place of business in California. And there is no evidence of any affiliations with Massachusetts that are so substantial that any defendant may be considered comparable to a Massachusetts company. Accordingly, this court may not assert general jurisdiction over the individual defendants or Meta.

### 2.     Specific Jurisdiction

In Massachusetts, a federal court can assert specific personal jurisdiction over an out-of-state defendant in a diversity case only if the state long-arm statute, Mass. Gen. Laws ch. 223A, § 3, so allows, and the exercise of jurisdiction is consistent with constitutional due process. *Daynard*, 290 F.3d at 52.

The Massachusetts long-arm statute authorizes personal jurisdiction as to any cause of action arising from, among others, defendant's "transacting any business in this commonwealth"; "causing tortious injury by an act or omission in this commonwealth"; or "causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth." Mass. Gen. Laws ch. 223A, § 3(a), (c), (d).

The Supreme Judicial Court has historically interpreted the long-arm statute to extend to the limits allowed by the United States Constitution. *See "Automatic" Sprinkler Corp. of America v. Seneca Foods Corp.,* 361 Mass. 441, 443 (1972); *Tatro v. Manor Care, Inc.,* 416 Mass. 763, 771 (1994). Accordingly, the First Circuit has held that a district court can "sidestep the statutory inquiry and proceed directly to the constitutional analysis." *Daynard*, 290 F.3d at

52.[2]

Due process requires that a defendant over whom a court seeks to exercise jurisdiction

has maintained "minimum contacts" with the state "such that the maintenance of the suit does

not offend traditional notions of fair play and substantial justice." *International Shoe Co. v.*

*Washington*, 326 U.S. 310, 316 (1945).  The minimum-contacts analysis has three prongs—

relatedness, purposeful availment, and reasonableness:

> First, the claim underlying the litigation must directly arise out of, or relate to, the
> defendant's forum-state activities.  Second, the defendant's in-state contacts must
> represent a purposeful availment of the privilege of conducting activities in the
> forum state, thereby invoking the benefits and protections of that state's laws and
> making the defendant's involuntary presence before the state's courts foreseeable.
> Third, the exercise of jurisdiction must, in light of the Gestalt factors, be
> reasonable.

*Adelson v. Hananel*, 510 F.3d 43, 49 (1st Cir. 2007) (quoting *Daynard*, 290 F.3d at 60)).  The

"gestalt" factors address the fairness and reasonableness of subjecting the defendant to the

court's jurisdiction by analyzing

> (1) the defendant's burden of appearing, (2) the forum state's interest in
> adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and
> effective relief, (4) the judicial system's interest in obtaining the most effective
> resolution of the controversy, and (5) the common interests of all sovereigns in
> promoting substantive social policies.

*Adelson*, 510 F.3d at 51 (quoting *United Elec., Radio, and Mach. Workers of America v. 163*

*Pleasant St. Corp.*, 960 F.2d 1080, 1088 (1st Cir. 1992)).  All three requirements must be met to

support a finding of specific jurisdiction.  *Phillips Exeter Academy v. Howard Phillips Fund*, 196

F.3d 284, 288 (1st Cir. 1999).  The First Circuit has adopted a "sliding scale" approach:  "[T]he

---

[2] "[I]n recent cases, [the First Circuit] ha[s] suggested that the Commonwealth's long-arm statute may impose limits on the exercise of personal jurisdiction 'more restrictive' than those required by the Constitution." *A Corp. v. All American Plumbing, Inc.*, 812 F.3d 54, 59 (1st Cir. 2016) (citing *Copia Commc'ns, LLC v. AMResorts, L.P.*, 812 F.3d 1, 4 (1st Cir. 2016)).  However, where, as here, the exercise of personal jurisdiction over defendants would not satisfy due process, the court need not reach the question of whether personal jurisdiction is appropriate under the "more restrictive" Massachusetts long-arm statute.  *A Corp.*, 812 F.3d at 59.

weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction;" but on the other hand, "a strong showing of reasonableness may serve to fortify a more marginal showing of relatedness and purposefulness." *Nowak*, 94 F.3d at 717 (internal citations omitted).

### a.    <u>Individual Defendants</u>

As to the individual defendants, the amended complaint does not allege that any of them conducted any activity whatsoever within the forum. The sole alleged connection between the individual defendants and the causes of action were unilateral communications from plaintiff, to which it is alleged there was no response. Such unilateral activity is not sufficient to establish the requisite connection between the defendants and the forum jurisdiction. *See PREP Tours, Inc. v. Am. Youth Soccer Org.*, 913 F.3d 11, 19-20 (1st Cir. 2019); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985); *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.").

Accordingly, defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(2) will be granted as to the individual defendants.

### b.    <u>Meta</u>

As for Meta, the personal-jurisdiction assessment requires a more in-depth analysis.

### i.    <u>Relatedness</u>

"For breach of contract claims, we ask whether the defendant's activity in the forum state was instrumental either in the formation of the contract or its breach." *Vapotherm, Inc. v. Santiago*, 38 F.4th 252, 258-59 (1st Cir. 2022) (internal quotations omitted). For tort claims, the relatedness inquiry "focuses on whether the defendant's *in-forum* conduct caused the injury or gave rise to the cause of action." *Swiss Am. Bank*, 274 F.3d at 622. Here, the complaint alleges

that plaintiff agreed to Meta's Terms of Service, among other alleged contracts, and has suffered monetary damages, "possible reputation damage, and restricted ability to communicate on facebook.com."  (FAC at 20-21, 23).

The circuit courts, in evaluating *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017 (2021), have emphasized that the forum contacts must relate to the cause of action.  *See Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 324 (5th Cir. 2021), *cert. denied*, 143 S. Ct. 485 (2022) ("For specific jurisdiction, a plaintiff must link the defendant's suit-related conduct to the forum.  Mere market exploitation will not suffice."); *Hepp v. Facebook*, 14 F.4th 204, 208 (3d Cir. 2021) ("In sum, the alleged contacts do not relate to [the cause of action], and the alleged [cause of action] does not relate to any of the contacts.").

The same is true here.  In *Ford*, the company "extensively promoted, sold, and serviced [vehicles] in Montana and Minnesota," and plaintiffs adduced evidence that they resided in the forum states, used the allegedly defective products in the forum States, and suffered injuries when those products malfunctioned in the forum states.  That created an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that t[ook] place."  Here, there is no tie of any kind between Massachusetts and the asserted causes of action.  *Ford Motor Co.*, 141 S. Ct. 1017, 1031-32 (2021) (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 262 (2017)).

The Massachusetts-based conduct that relates to the causes of action is not instrumental or causal.  For example, even if the $2,500 cash grant to plaintiff from the Facebook Small Business Grants Program for Black-Owned Businesses could be said to have occurred within Massachusetts, it did not give rise to the causes of action.  Rather, it contributed to the damages that plaintiff alleges (an unused credit) but not to causing the allegedly negligent actions or

contractual breach.  Instead, the relevant alleged conduct consists of decisions made within the company to remove content, disable plaintiff's account, and (arguably) to fail to explain those actions.  There is no allegation that any of those decisions occurred in Massachusetts.

In short, neither the alleged breach of contract nor the alleged tortious conduct appreciably occurred within the forum.  While contract formation within the forum might conceivably be sufficient to find relatedness, plaintiff has neither alleged nor put forward any evidence to demonstrate jurisdiction on that basis.  *See Vapotherm, Inc.*, 38 F.4th 259-62; *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 27-28 (1st Cir. 2008) (assuming sufficient relatedness where plaintiff's claim arose out of his contractual relationship, and he received communications in Massachusetts).  That is insufficient to find relatedness.  *See Motus, LLC v. CarData Consultants, Inc.*, 23 F.4th 115, 123 (1st Cir. 2022).

### ii.   <u>Purposeful Availment</u>

"In website cases, [the First Circuit] ha[s] recognized that the 'purposeful availment' element often proves dispositive."  *Motus*, 23 F.4th at 124; *see also Chen v. United States Sports Acad., Inc.*, 956 F.3d 45, 59 (1st Cir. 2020); *Cossaboon v. Maine Med. Ctr.*, 600 F.3d 25, 35-36 (1st Cir. 2010).

"The function of the purposeful availment requirement is to assure that personal jurisdiction is not premised solely upon a defendant's 'random, isolated, or fortuitous' contacts with the forum state."  *Sawtelle v. Farrell*, 70 F.3d 1381, 1391 (1st Cir. 1995) (quoting *Keeton v. Hustler Magazine*, 465 U.S. 770, 774 (1984)).  The two "key focal points" of the purposeful-availment test are voluntariness and foreseeability:  "[t]he contacts must be voluntary and not based on the unilateral actions of another party," and "the defendant's contacts must be such that he could reasonably anticipate being haled into court there."  *Adelson*, 510 F.3d at 50 (internal citations and quotations omitted).

14

In *Cossaboon*, the First Circuit addressed the question of whether an interactive website, located outside the forum state and directed at residents of every state, may, on its own, fulfill the requirement of purposeful availment.  600 F.3d at 35-36.  The court held that something "more" is required to support the exercise of personal jurisdiction based on website activity, and that it must be "focused on the extent to which the defendant has actually and purposefully conducted commercial or other transactions with forum state residents through its website."  *Id.* at 35.  In finding that it lacked personal jurisdiction over the defendant, the court found it instructive that the defendant's website was available to anyone with internet access, did not target forum state residents in particular, and any advertising on it was no more likely to solicit business in the forum state than anywhere else.  *Id.* at 35.

Here, the services of Meta, including facebook.com, are available to anyone with Internet access, do not target residents of Massachusetts in general, and contain advertising no more likely to solicit customers in Massachusetts than anywhere else.

Interactive online platforms, particularly social media, may present a "closer question." *Chen*, 956 F.3d at 60 (discussing interactive learning platform where plaintiff allegedly completed coursework and attempted fulfill a degree requirement); Gregory C. Cook & Andrew Ross D'Entremont, *No End in Sight? Navigating the "Vast Terrain" of Personal Jurisdiction in Social Media Cases After* Ford, 73 ALA. L. REV. 621 (2022); *but see, e.g.*, *Ralls v. Facebook*, 221 F. Supp. 3d 1237, 1244 (W.D. Wash. 2016) (finding no personal jurisdiction over Facebook); *Gullen v. Facebook.com, Inc.*, 2016 WL 245910, at *2 (N.D. Ill. Jan. 21, 2016) (same); *Harrison v. Facebook, Inc.*, 2019 WL 1090779, at *4 (S.D. Ala. Jan. 17, 2019) (same); *Georgalis v. Facebook, Inc.*, 324 F. Supp. 3d 955, 961-62 (N.D. Ohio 2018) (same).  As a general matter, Meta "could have anticipated that Massachusetts residents (like residents of any other state)"

would access its online services.  *Chen*, 956 F.3d at 60.  However, "this broad and generic degree of foreseeability is insufficient, standing alone, to rise to the level of purposeful availment."  *Id.* It cannot be sufficient that wherever plaintiff accesses Meta services, there is jurisdiction. "[J]urisdiction cannot be carted from state to state, enabling a plaintiff to sue in any state to which he chooses to roam."  *Id.* at 62.  Without some limiting principle with regard to purposeful availment, the simple fact that virtually every business now has a website would "eviscerate" the limits on personal jurisdiction over out-of-state defendants.  *Cossaboon*, 600 F.3d at 35.

In short, there must be something "more" that "indicat[es] something over and above the defendant's mere awareness that its products were entering a given market in the stream of commerce."  *Motus*, 23 F.4th at 124-25.  Typically, such factors include "evidence of specific targeting of forum residents and evidence that the website has generated 'substantial revenue from forum residents.'"  *Id.* at 125 (quoting *Chen*, 956 F.3d at 60).

The amended complaint alleges that in addition to using Meta's products as a general matter, plaintiff became a "Level-Up Creator"; used a Facebook Business Suite account, Facebook advertising account, and Facebook Creator Studio; and was awarded a $2,500 cash grant from the Facebook Small Business Grants Program for Black-Owned Businesses.  (FAC ¶¶ IV(e)-(h), (k)).  The grant arguably distinguishes this case from *Chen* or *Motus*.  There are alleged case-specific contacts here that stem from other than plaintiff's "unilateral activity" and that indicate Meta "initiated any in-forum activity involving that plaintiff []or dealt with him knowing that he was located in the forum."  *Chen*, 956 F.3d at 61-62.

However, when such connections occur remotely, three factors are relevant to determining whether such "remote communications supplied the predicate for the contacts that ground specific or case-linked personal jurisdiction over an out-of-forum defendant:  'the

16

defendant's in-forum solicitation of the plaintiff's services, the defendant's anticipation of the plaintiff's in-forum services, and the plaintiff's actual performance of extensive in-forum services.'" *PREP Tours*, 913 F.3d at 20 (quoting *Copia Commc'ns, LLC v. AMResorts, L.P.*, 812 F.3d 1 (1st Cir. 2016)).  While the Court could hazard a guess that between the application and awarding of the grant Meta could have obtained sufficient knowledge of plaintiff's existence and his likely whereabouts, that is not sufficient.  "Jurisdiction cannot be premised on guesswork, and the record does not support a finding that . . . [defendant's contacts] constitute purposeful availment with respect to Massachusetts."  *Motus*, 23 F.4th at 125.

In summary, plaintiff has not met his burden to satisfy the purposeful availment requirement as to either claim.

### iii.   <u>Reasonableness</u>

Finally, the exercise of personal jurisdiction must be reasonable.  Courts undertaking that analysis consider the five "Gestalt" factors:

> (1) the defendant's burden of appearing [in the forum state], (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

*Adelson*, 510 F.3d at 51 (quoting *163 Pleasant St. Corp.*, 960 F.2d at 1088).

As to the first factor, although it would be somewhat burdensome for defendant to appear before this court, it is "almost always inconvenient and costly for a party to litigate in a foreign jurisdiction."  *Nowak*, 94 F.3d at 718.  For this factor to have any significance, the defendant must demonstrate that the "exercise of jurisdiction in the present circumstances is onerous in a special, unusual, or other constitutionally significant way."  *Pritzker v. Yari*, 42 F.3d 53, 64 (1st Cir. 1994).  Here, there is no evidence that defendant's burden of litigating in this forum is any greater than the burden for a typical foreign defendant.

17

The purpose of the second factor "is not to compare the forum's interest to that of some other jurisdiction, but to determine the extent to which the forum has an interest." *Sawtelle*, 70 F.3d at 1395 (quoting *Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 151 (1st Cir.1995)). Although it is true that a forum state has a demonstrable interest in obtaining jurisdiction over a defendant who causes tortious injury within its borders, when none of the acts comprising the defendant's alleged negligence and breach—the decisions to remove content, disable plaintiff's account, and not to explain these actions—are alleged to have occurred within the forum state, this factor cuts against jurisdiction. *Id.; see Donatelli v. Nat'l Hockey League*, 893 F.2d 459, 472 (1st Cir. 1990) ("[A]part from a generalized concern for the rights of its own domiciliaries, the [forum] state has no real interest in adjudicating the controversy").

As to the third factor, "a plaintiff's choice of forum must be accorded a degree of deference with respect to the issue of its own convenience." *Sawtelle*, 70 F.3d at 1395.

The fourth and fifth factors do not point in any particular direction. *See Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 211 (1st Cir. 1994).

Taken together, plaintiff has demonstrated the bare minimum, if that, with respect to the first two stages of the due-process inquiry. The relatedness factor is weak to non-existent because his claims did not meaningfully arise out of defendant's contacts with Massachusetts, except, perhaps, because of the execution of one or more contracts. And even that basis is not alleged, much less adduced. While Meta's grant and communications with plaintiff may represent some degree of voluntariness, there has been no showing that it purposefully availed itself of doing business in Massachusetts. Finally, the strength of the reasonableness factor is not sufficient to fortify the analysis even if there were borderline showings of relatedness and purposefulness. *See Nowak*, 94 F.3d at 717; *Sawtelle*, 70 F.3d at 1395.

In sum, defendant has not maintained "minimum contacts" with Massachusetts "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co.*, 326 U.S. at 316.  Accordingly, defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(2) will be granted also as to Meta.[3]

**IV.**   **Conclusion**

For the foregoing reasons, the entry of default against Meta Platforms, Inc., Mark Zuckerberg, Jennifer Newstead, and Andrew Bosworth is VACATED, and the amended complaint is DISMISSED for insufficiency of service of process under Fed. R. Civ. P. 12(b)(5) and lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Dated:  December 1, 2023             Chief Judge, United States District Court

---

[3] Because the Court lacks personal jurisdiction over defendants, it declines to decide whether the matter should be dismissed for failure to state a claim.